**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**ROBERT MARTIN**                                                                **PLAINTIFF**

**V.**                                          **5:09CV00018 JMM**

**AGRICULTURAL PRODUCTIVITY**
**d/b/a AG PRO OF DEWITT, ARKANSAS, et al**                      **DEFENDANT**

<u>ORDER GRANTING DEFENDANT'S</u>
<u>MOTION FOR SUMMARY JUDGMENT</u>

        Pending is the Defendant's Motion for Summary Judgment and the Plaintiff's Motion to

Amend.  The parties have responded.  For the reasons set forth below, the Motion for Summary

Judgment is GRANTED.  The Motion to Amend is DENIED.

I. <u>Facts</u>[1]

        Plaintiff Robert Martin was a service technician, or mechanic, at Ag-Pro DeWitt.

Defendant Ag-Pro DeWitt operates a John Deere dealership.  Bill Hawkins is the President of

Ag-Pro Companies and Greg Stewart is the General Manager of Ag-Pro DeWitt.

        In March, 2003, Plaintiff suffered a stroke and was off work for six months.  While he

was off, Mr. Stewart and Mr. Hawkins agreed to continue his full salary, even though Ag-Pro

had no policy that required it.  Mr. Stewart and Mr. Hawkins did this in recognition of Plaintiff's

years of service and because of their compassion for him.  Mr. Hawkins even visited Plaintiff

while he was off work.

        In July 2004, Ag-Pro adopted an incentive based pay system for all service technicians.

This plan was based on the number of hours charged to the customer.  The plan was again

_____

        [1] Defendant has filed a Statement of Material Facts Not in Dispute as required by Local
Rule 56.1(a).  The facts contained in the statement have not been controverted by Plaintiff and
are, therefore, deemed admitted in accordance with Local Rule 56.1(c).

changed somewhat in January 2006.  A technician could earn anywhere from $14.00 per hour to $23.00 per hour depending on how many hours of his work was actually billed to a customer. The more productive an employee, the more he earned in subsequent months as his base pay rate.

Most repair work is billed according to standard estimating guides such as Marketing Service Time ("MST").  If the technician can perform the work in less than the estimated and billed time, he is more productive.  But, vice versa, if the mechanic takes more time than what will be billed to the customer, he is less productive.  The technician gets paid for all the hours he is at work, however.  The goal is to meet or exceed the MST.  Because of his performance as it related to the MST, Plaintiff did not earn the highest hourly rate.  In fact, Plaintiff made only $20 per hour for one month prior to his discharge.

In late October or early November 2004, Lance Stroh was announced as the new Service Manager.  Stroh had been a technician at Ag-Pro for thirteen years, but had left to open his own shop.  After running his own shop for about two years, Stewart hired Stroh to be the Service Manager at Ag-Pro DeWitt.  When Bill Hawkins, the General Manager, announced the decision to the employees in DeWitt, Plaintiff walked out.  After the announcement, Plaintiff states that he asked Mr. Hawkins to appoint him Service Manager because he felt like he was "next in line" because of the years Plaintiff had been with Ag-Pro.  Plaintiff was "hurt" and upset that Lance Stroh was the new Service Manager.  Plaintiff contended that he did not receive the service manager position on account of his age.

Plaintiff let his obvious and admitted unhappiness about his pay and Stroh's hiring affect his interactions with his coworkers.  This resulted in Plaintiff being counseled about his abrasive

2

nature after his stroke.  Plaintiff complained about his pay, commenting that he was worth as much as any technician out there because of his tenure.  The incentive-based system was explained to him time and again.  According to Stewart, Plaintiff acted as if he could not understand that his pay rate was based solely on "billable hours."  At Plaintiff's deposition, Plaintiff admitted that experience had nothing to do with the way the company paid based on productivity.  Plaintiff also admitted that if the pay scale is based on productivity one would expect different technicians to earn different rates of pay.  As an example of Plaintiff's behavior toward co-workers, Plaintiff logged other technicians off of the shared computer and complained that he should have a laptop of his own.  Plaintiff also publicly and repeatedly complained when other technicians used company-provided tools when he thought they should be available to him.

Karen Isom, Service Clerk at Ag-Pro DeWitt, assisted the regular or acting Service Manager.  Plaintiff admitted that he "talked back" to Karen Isom when she assigned Plaintiff work and that Ms. Isom complained to Stewart about Plaintiff approximately three times.

On July 20th and 21st, 2006, both Greg Stewart and Lance Stroh were out of town. Franklin Cannamore, an Ag-Pro employee since 1974, was the Acting Service Manager.  On July 20, 2006, Isom reported that Plaintiff acted mad for no reason and essentially did nothing that day.  On July 21st, a customer called to report a problem with a tractor that Plaintiff had recently repaired.  Cannamore asked Plaintiff to go to the customer's farm to diagnose and repair the tractor.  Plaintiff, who was sitting in his pickup, refused to listen to Cannamore.  Plaintiff rolled up his window and drove off while Cannamore was attempting to explain the situation to Plaintiff.  Plaintiff did not give Cannamore any indication whether he would go to the customer's farm or not.  After Plaintiff returned from his personal errand, Cannamore asked Ms. Isom to

3

prepare a work order.  Isom asked Cannamore which technician to assign to the work order and Cannamore instructed her to ask Plaintiff if he was going to do the work.  When Isom inquired, Plaintiff replied, "Who wants to know."  Plaintiff did not deny this.  Isom responded that she needed to know because she needed to sent another technician if Plaintiff was not going to do the work.  Plaintiff angrily stated that he "had too many bosses, and this is going to stop."  Isom reported that Plaintiff then slammed the door.  Plaintiff admitted making this statement because he didn't think "everybody" should tell him what to do. Plaintiff denied slamming the door.

Isom also reported that after she returned to her office Plaintiff came in and cursed at her repeatedly. Isom further reported to Mr. Stewart that as Plaintiff was leaving he yelled at Cannamore, "I hope you are satisfied, I'm going over there to take care of this son of a bitch." (Stewart Aff. at para. 23).  Plaintiff told Cannamore that he was taking another employee, Darren Carter, with him even though the job should not have required two employees.  When Mr. Stroh returned, Cannamore reported this incident with Plaintiff.

After learning of the incident from Stroh, Mr. Stewart talked with Isom, Cannamore and Randy Jones, another employee who was present during the incident.  Isom and Cannamore both confirmed that Plaintiff used profanity.  Jones agreed that Isom did nothing to provoke Plaintiff's hostile attitude.  Mr. Stewart discussed Plaintiff's behavior with Bill Hawkins.  In light of the fact that Plaintiff had been counseled about his rude behavior previously, he continued to exhibit a generally negative attitude, and was involved in the incident of July 21st, Mr. Stewart made the decision to discharge Plaintiff.

Plaintiff filed a Charge of Discrimination with the EEOC on August 18, 2006.  He stated that he believed he was discharged because of his race and his age.  Plaintiff was issued a Notice

of Right to sue the Defendant on January 31, 2007.  Plaintiff filed a complaint against the

Defendant on April 16, 2007.  However, Plaintiff requested a voluntary dismissal of the

Complaint which was granted by the Court on December 17, 2007.  Plaintiff filed the present

Complaint on November 21, 2008 alleging racial discrimination in violation of Title VII of the

Civil Rights Act of 1964 and the Arkansas Civil Rights Act.

## II.  Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so

that the dispute may be decided solely on legal grounds.  *Holloway v. Lockhart*, 813 F.2d 874

(8th Cir. 1987);  Fed. R. Civ. P. 56.  The Supreme Court has established guidelines to assist trial

courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there
> is a need for trial -- whether, in other words, there are genuine
> factual issues that properly can be resolved only by a finder of fact
> because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be

invoked carefully so that no person will be improperly deprived of a trial of disputed factual

issues.  *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*,

444 U.S. 991 (1979).  The Eighth Circuit set out the burden of the parties in connection with a

summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to
> demonstrate, *i.e.*, '[to] point out to the District Court,' that the
> record does not disclose a genuine dispute on a material fact.  It is
> enough for the movant to bring up the fact that the record does not
> contain such an issue and to identify that part of the record which
> bears out his assertion.  Once this is done, his burden is
> discharged, and, if the record in fact bears out the claim that no

> genuine dispute exists on any material fact, it is then the
> respondent's burden to set forth affirmative evidence, specific
> facts, showing that there is a genuine dispute on that issue.  If the
> respondent fails to carry that burden, summary judgment should be
> granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th

Cir. 1988) (citations omitted)(brackets in original)).  Only disputes over facts that may affect the

outcome of the suit under governing law will properly preclude the entry of summary judgment.

*Anderson*, 477 U.S. at 248.

### III.  Discussion of the Law

#### A.  Summary Judgment

The Defendant argues that summary judgment is warranted in this case because the

action was not filed within 90 days of Plaintiff's receipt of a Right to Sue letter from the EEOC.

In the alternative, the Defendant contends that Plaintiff cannot establish that race was a

motivating factor in his discharge or any other employment decision.  Finally, Defendant argues

that the allegations of pay discrimination contained in Plaintiff's Complaint are untimely, were

not contained in his EEOC Charge, and tend to undercut his discharge claim.  In response,

Plaintiff apparently concedes that his Complaint under Title VII is untimely because he seeks to

amend his Complaint to include only discrimination claims under 42 U.S.C. § 1981 and the

Arkansas Civil Rights Act.

First, the Court agrees that Plaintiff's Title VII claims are untimely because Plaintiff

failed to file this suit within 90 days of receipt of his Right to Sue letter.  *See* 42 U.S.C. § 2000e-

5(f)(1).  Plaintiff has not shown that the 90 day limitation period should be equitably tolled.

Likewise, Plaintiff's claims under the Arkansas Civil Rights Act are also untimely.  Ark. Code

6

Ann § 16-123-107(c)(3)("Any action based on employment discrimination in violation of subdivision (a)(1) of this section shall be brought within one (1) year after the alleged employment discrimination occurred, or within ninety (90) days of receipt of a "Right to Sue" letter or a notice of "Determination" from the United States Equal Employment Opportunity Commission concerning the alleged unlawful employment practice, whichever is later."). Therefore, Plaintiff's Title VII and ACRA claims must be dismissed.

Moreover, after review of the record, Plaintiff has not proven a prima facie case of race discrimination.  There is no evidence that the Defendant terminated Plaintiff's employment after thirty-three years with Ag-Pro and six months of paid medical leave because of his race.  The facts in this case seems somewhat counterintuitive.  Further, the Defendant has also articulated a legitimate business reason for Plaintiff's termination, his negative attitude.  In his deposition, Plaintiff does not deny the July 21st incident occurred or that he was angry with his supervisors and co-workers because he felt he deserved preferential treatment based upon his tenure. Plaintiff has failed to show that the Defendant's reason for terminating him is a pretext for discrimination.  For these reasons, Defendant's Motion for Summary Judgment is GRANTED.

B.  Motion to Amend

Plaintiff asks the Court to allow him to amend his Complaint to omit the Title VII claims and add identical claims under § 1981 because the statute of limitations for § 1981 claims is four years.  However, the deadline for amending the pleadings in this case was June 5, 2009.  Plaintiff filed his Motion to Amend on August 20, 2009, well after the amendment deadline.  Plaintiff does not give any reason or excuse for failure to amend his Complaint within the specified time. *See In re Milk Products Antitrust Litigation,* 195 F.3d 430, 437 (8th Cir. 1999)("When the district

court has filed a Rule 16 pretrial scheduling order, it may properly require that good cause be shown for leave to file an amended pleading that is substantially out of time under that order.").

"Although amendment of a complaint should be allowed liberally to ensure that a case is decided on its merits, ... there is no absolute right to amend." *Floyd v. State of Missouri Dept. of Social Services, Div. of Family Services,* 188 F.3d 932, 939 (8th Cir.1999)(quoting *Ferguson v. Cape Girardeau County,* 88 F.3d 647, 650-51 (8th Cir. 1996)). "Much of the value of summary judgment . . .would be dissipated if a party were free to rely on one theory in an attempt to defeat a motion for summary judgment and then, should that theory prove unsound, come back long thereafter and fight on the basis of some other theory." *Littlefield v. City of Afton,* 785 F.2d 596, 610 (8th Cir. 1986)(quoting *Freeman v. Continental Gin Co.,* 381 F.2d 459, 470 (5th Cir. 1967)).

Plaintiff has filed this case against the Defendant twice. Plaintiff non-suited the first complaint after being ordered by the Court to respond to the Defendant's discovery requests. The case was pending for eight months. Plaintiff re-filed the case almost one year later on November 21, 2008. Defendant filed its Answer on December 17, 2008. In the Answer, Defendant states that Plaintiff's claims are barred by his failure to bring this claim within the applicable limitations period provided by statute. (Answer at p. 9). Thus, Plaintiff was on notice that his Title VII and ACRA claims were barred by the applicable statute of limitations as early as December of last year. There is no new information in the proposed amendment. Plaintiff has been in possession of all the facts and circumstances of the case since the first filing in 2007.

Plaintiff has waited eight months to file a motion to amend. Plaintiff has waited until the amendment, the discovery, and the dispositive motion deadlines have passed. Plaintiff has waited until the Defendant has filed a meritorious motion for summary judgment. Further, the

8

Defendant has waited until trial of this matter is scheduled to begin in six weeks.  To allow Plaintiff to amend at this late date would be unjust.

For all of these reasons, the Court finds that Plaintiff should not be allowed to amend his Complaint.  Plaintiff's Motion to Amend is DENIED.   *See Davis v. City of St. John,* 182 Fed. Appx. 626, 627 (8th Cir. 2006)("Almost all of the information that the Davises sought to add to their complaint had been in their possession well before the suit began, and yet they did not seek its inclusion until after the parties had completed discovery and the defendants had moved for summary judgment. We conclude that the district court did not abuse its discretion in denying the motion to amend.");  *Hammer v. City of Osage Beach, MO,*  318 F.3d 832, 844 -845 (8th Cir. 2003)("The district court had already granted leave to amend once, and the second motion for leave to amend was filed after discovery had closed and the City had moved for summary judgment on the pleaded theories. Therefore, the district court had adequate reasons to deny Hammer's motion.");  *Floyd v. State of Mo. Dept. Of Social Services,* 188 F.3d 932 (8th Cir. 1999); *Ferguson v. Cape Girardeau County,* 88 F.3d 647 (8th Cir. 1996).

## IV.  <u>Conclusion</u>

Defendant's Motion for Summary Judgment (Docket # 17) is GRANTED and the Plaintiff's Motion to Amend (Docket # 22) is DENIED.  The Clerk is directed to close the case. The trial scheduled for October 5, 2009 is cancelled.

IT IS SO ORDERED this 3rd day of September, 2009.

_____

James M. Moody
United States District Judge